UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22098-Civ-KING
MAGISTRATE JUDGE P. A. WHITE

JORGE ECHEMENDIA,                    :

      Petitioner,              :

v.                                   :          <u>REPORT OF</u>
                                                <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,                    :

      Respondent.              :
_____

    Jorge Echemendia, a state prisoner confined at Glades Correctional Institution, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions of first degree murder and other offenses entered on a jury verdict in Dade County Circuit Court case number 96-237B.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition the Court has a memorandum of law filed by the petitioner, and the response of the state to an order to show cause with multiple exhibits.

    Echemendia makes the following claims:

        1.    The trial court committed fundamental error and violated his right to a fair trial by allowing Detective Fadal to testify that he thought the petitioner was guilty of first degree murder.

2.  Trial counsel's failure to object to the impermissible testimony of Detective Fadal established on the face of the record that petitioner was denied effective assistance of counsel.

3.  The trial court erred in allowing the state to introduce the former testimony of Detective Cabrera without establishing that Cabrera was unavailable to testify.

4.  His conviction was obtained through the prosecution's failure to disclose evidence that was exculpatory or could have been used for impeachment.

5.  The trial court erred by omitting a portion of Detective Cabrera's former testimony.

6.  He received ineffective assistance of appellate counsel when his attorney failed to supplement the brief with the standard established in <u>Crawford v. Washington</u> as to the former testimony of Detective Cabrera.

7.  His right to be present at all critical stages of the proceedings was violated when the court granted the state's motion for a pre-trial witness bond in his absence and that of his counsel.

8.  He received ineffective assistance of counsel when no motion to suppress his pretrial statements was filed.

9.  He received ineffective assistance of counsel when his lawyer failed to file a motion to suppress inculpatory tangible evidence.

10. He received ineffective assistance of counsel when his lawyer failed to make an adequate objection to the impermissible testimony elicited from Detective Fadal.

11. He received ineffective assistance of

2

counsel when his attorney failed to object to the admission of Deputy Cabrera's former testimony on the ground that the state had made no showing that the witness was unavailable.

12. The state withheld exculpatory evidence in the form of a plea agreement with key witness Lazaro Drake, in violation of Brady v. Maryland.

13. [The petitioner expressly abandoned this claim. See DE 1 at 13]

14. The state committed a violation of Giglio v. United States when it presented false testimony that Lazaro Drake received no benefit in exchange for his testimony.

15. He received ineffective assistance of counsel when his lawyer failed to object to the court's decision to strike the portion of Detective Cabrera's former testimony that petitioner had requested an attorney.

On July 17, 1996, Echemendia was indicted for first degree murder, burglary with an assault or battery while armed, and shooting or throwing a deadly missile. All of the charges stemmed from the shooting death of Angel Blanco. [DE 14, Ex.A] Following a third jury trial,[1] Echemendia was convicted of all offenses as charged. [DE 14, Ex.D] On August 25, 2000, he was sentenced to

---

[1]The convictions entered after Echemendia's first trial were reversed on direct appeal on the basis of a translation error by the court interpreter. Echemendia v. State, 735 So.2d 555 (Fla. 3 DCA 1999). A second trial ended in a mistrial. [DE 14, Ex.B-C]
    The history of Echemendia's state court litigation was characterized by an unusual number of procedural anomalies. Because they are not germane to the issues involved in this federal proceeding, those irregularities will not be described in this report, but they are detailed in the state's response to the order to show cause. [DE 12 at 2-11]

serve two consecutive life sentences for the murder and armed burglary, plus a 15-year sentence with a three year minimum mandatory term for the remaining count. [DE 14, Ex.E]

Echemendia prosecuted a direct appeal, raising the first three claims of this federal petition, as listed above. [DE 14, Ex.G] On May 19, 2004, his convictions and sentence were affirmed without comment. Echemendia v. State, 874 So.2d 590 (Fla. 3 DCA 2004) (table). His convictions became final for federal purposes ninety days thereafter, on or about August 17, 2004. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986) (conviction is final when judgment of conviction has been rendered, availability of appeal exhausted, and time for petition for certiorari elapsed or petition is denied); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002).

On August 16, 2004, Echemendia filed a petition in the state appellate court which was treated as an application for habeas corpus relief [DE 14, Ex.N], in which he raised claims 4 through 7 of this federal petition as listed above. [DE 14, Ex.J] The petition was denied on May 2, 2006. Echemendia v. State, 928 So.2d 351 (Fla. 3 DCA 2006)(table).

On May 30, 2006, Echemendia submitted a motion for postconviction relief pursuant to Fla.R.Cr.P. 3.850, raising claims 8 though 15 of this federal petition. [DE 14, Ex.R] The collateral trial court denied relief in a written order which will be discussed in greater detail infra [DE 14, Ex.T], and that result was summarily affirmed without written opinion, Echemendia v. State, 959 So.2d 737 (Fla. 3 DCA 2007)(table), with the mandate issuing on July 7, 2007. [DE 14, Ex.T] This federal petition ensued

on August 9, 2007.[2]

The respondent rightfully does not challenge this petition on the basis of the one-year limitations provision of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period). In addition, the respondent correctly acknowledges that Echemendia's claims were exhausted in the state forum and are ripe for federal review. Anderson v. Harless, 459 U.S. 4 (1982)(issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted).

Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determina-

---

[2]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Vanderberg v. Donaldson, 259 F.3d 1321 (11 Cir. 2001); Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). [DE 1 at 16]

> tion of the facts in light of the
> evidence presented in the State
> court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (1999), the Supreme Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal
> habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that
> reached by this Court on a question of law or
> if the state court decides a case differently
> than this Court has on a set of materially
> indistinguishable facts. Under the "unreas-
> onable application" clause, a federal habeas
> court may grant the writ if the state court
> identifies the correct governing legal prin-
> ciple from this Court's decisions but unreas-
> onably applies that principle to the facts of
> the prisoner's case.

"Clearly established federal law" refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. <u>Putnam v. Head</u>, 268 F.3d 1223, 1241 (11 Cir. 2001). A state court's decision is "contrary to" clearly established federal law if the state court 1) applied a rule that contradicts United States Supreme Court case law, or 2) arrived at a result different from that reached in a United States Supreme Court decision when faced with materially indistinguishable facts. <u>Id</u>.; <u>see also</u>, <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11 Cir. 2001). A state court arrives at an "unreasonable application" of clearly established federal law if it 1) unreasonably applies a correct legal principle for Supreme Court case law to the facts of a petitioner's case, or 2) unreasonably extends or declines to extend a legal principle from Supreme Court case law to a new situation. <u>Id</u>. In this context, an "unreasonable application" is an "objectively unreasonable" application. <u>Williams v. Taylor</u>, <u>supra</u>

at 409.

The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002).

In his first claim, Echemendia argues that the trial court committed fundamental error and violated his right to a fair trial by allowing Detective Fadal to testify that he thought Echemendia was guilty of first degree murder. As background, this case arose from an incident that occurred at the Dixie Ross Hotel on New Years Day of 1996. Two individuals who would become the key prosecution witnesses in this case, Lazaro Drake and Abelardo Carbajal, had a verbal dispute that escalated into a physical altercation. [T.491-94] While they were fighting, Carbajal saw Echemendia begin to fight with the decedent, Angel Blanco. [T.499] Eventually Carbajal and Blanco left the area, and later that night Carbajal dropped Blanco off back at the hotel. [T.502]

At 11:15, a Hialeah police officer was dispatched to the Dixie Ross Hotel, where he found Angel Blanco dead of a shotgun wound to the head. [T.406] Detective Fadal, a homicide investigator, interviewed Lazaro Drake and another man named Sergio Adames who had been involved in the altercation and who had left the scene

7

with Echemendia. [T.501, 336] Both initially denied any involvement but after interrogation, both blamed the shooting on Echemendia. [T.341] The murder weapon was discovered in Drake's apartment, and no fingerprints were found on it. [T.321]

Based on the statements of Drake and Adames, Echemendia was arrested for Blanco's murder. [T.343] A bag containing four spent shotgun shells was discovered in an alleyway behind his house [T.370], and a firearms examiner testified that they had been fired from the shotgun that was recovered from Drake's apartment. [T.437]

Although the details of the incident varied in their accounts, both Drake [T.454] and Adames [T.288] testified that they were in the hotel room and witnessed Echemendia shoot Blanco with the shotgun. Another witness, Jacqueline Sanyustiz, testified that although she was high on cocaine that night, she remembered seeing Echemendia and Drake walking in a hallway of the hotel, and Echemendia was carrying a shotgun. [T.378]

At trial, Detective Fadal testified that he separated Drake and Adames prior to taking their statements because he wanted "...consistency and objectivity. I don't want those two guys talking to each other to get their stories together as far as what they wanted to tell us." [T.341] The following colloquy then occurred:

> PROSECUTOR: After speaking to both Mr. Adames and Mr. Drake, did you come to a conclusion that their statements were consistent with each other?
>
> DETECTIVE: Yes.
>
> PROSECUTOR: Now, as a result of the investigation that you had done so far,

did you believe that you knew who the
suspect that had committed the crime was?

DETECTIVE: Yes.

PROSECUTOR: Okay. And who did you believe
had committed that homicide?

DETECTIVE: Mr. Echemendia.

[T.341-42]

On direct appeal, the state conceded that the introduction of
the foregoing testimony that the detective believed Echemendia was
guilty was error. [DE 14, Ex.H at 8] However, it argued that the
error was not preserved because no contemporaneous objection was
lodged, and that in any event, the error was no more than harmless
given both the strength of the state's case and the weakness of the
defense. [DE 14, Ex.H at 8-13] The appellate court subsequently
affirmed Echemendia's convictions without comment. Echemendia v.
State, supra.

Federal courts in habeas corpus proceedings do not sit to
review state evidentiary questions unless the alleged error is of
such magnitude as to render the state court defendant's trial
fundamentally unfair. Estelle v. McGuire, 502 U.S. 62 (1991); Sims
v. Singletary, 155 F.3d 1312 (11 Cir. 1998)(denying habeas corpus
relief on a claim that a motion for mistrial was wrongfully
denied); Osborne v. Wainwright, 720 F.2d 1237, 1238 (11 Cir. 1983).
In general, federal courts are reluctant to second-guess state
evidentiary rulings, recognizing that states deserve wide latitude
in that area, Maness v. Wainwright, 512 F.2d 88, 92 (5 Cir. 1975),
so federal habeas corpus relief is rarely deemed appropriate for
such claims. Moreover, such rulings are subject to the harmless
error analysis and will support habeas relief only if the error
"had substantial and injurious effect or influence in determining

9

the jury's verdict." <u>Sims</u>, <u>supra</u>, <u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).

Here, for the reasons that were successfully argued to the state appellate court, Detective Fadal's testimony did not affect the outcome of Echemendia's trial. As noted above, two eyewitnesses - Adames and Drake - both testified that they were present when Echemendia entered the hotel room with a shotgun in his hand and used it to kill Blanco. [T.288, 454-55] A third witness saw Echemendia carrying the gun in a hotel hallway moments before the shooting [T.377, 386] and shell casings that were fired from the weapon were found outside his home. Echemendia had motive to harm Blanco because they had been fighting earlier in the day, and the alibi testimony with which Echemendia attempted to defend himself was fraught with weaknesses.[3] Finally, the fact that the lead detective in the case was of the opinion that Echemendia was guilty cannot have come as a surprise to the jury, and his testimony was not highlighted as a feature of the prosecution's case; for instance, it was not cited in the prosecutor's closing argument. Under these circumstances, the state appellate court's implicit conclusion that admitting Detective Fadal's testimony did not impact the outcome of Echemendia's trial and hence was harmless was factually reasonable and in accord with applicable federal authorities, <u>Brecht v. Abrahamson</u>, <u>supra</u>, and the same result should pertain here. <u>Williams v. Taylor</u>, <u>supra</u>.

---

[3]Echemendia claimed that he was at the apartment of Angel Alvarez playing dominoes when the shooting occurred. [T.629-30] However, Alvarez had been drinking heavily, having consumed 18 to 24 beers between 3 p.m. and 1 a.m. [T.595] His apartment was within two or three blocks of the Dixie Ross Hotel, and Alvarez left the apartment to go buy more liquor at around the time of the shooting and was gone for at least 15 minutes [T.562-63], during which period he clearly could not account for Echemendia's whereabouts.

In his second claim, Echemendia argues that his attorney's failure to object to the impermissible testimony of Detective Fadal constituted ineffective assistance of counsel. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). A claim of ineffective assistance of counsel fails unless both prongs of the Strickland analysis are satisfied. Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Review of counsel's conduct is to be highly deferential, Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Here, for the reasons that were explained in connection with claim one, supra, while counsel's failure to object to the detective's testimony was error, it did not cause Echemendia to suffer prejudice since it did not change the outcome of his trial. Accordingly, since both prongs of the Strickland analysis are not met by this claim, its denial by the state courts was in accord with applicable federal authorities, Waters v. Thomas, supra, and that same result should occur here. Williams v. Taylor, supra.

In his third claim, Echemendia asserts that the trial court erred in allowing the state to introduce the former testimony of

Detective Cabrera without establishing that Cabrera was unavailable to testify. Cabrera previously had testified in Echemendia's second trial which ended in a mistrial, see n. 1, supra, and at the third trial under consideration here the state sought to rely on that former testimony because "Detective Osvaldo Cabrera, who testified last time is on military leave and his commander for the U.S. Government will not release him to come testify." [DE 18, T.663] The court allowed Cabrera's earlier testimony to be read to the jury in this case. [DE 18, T.680 et seq.] On direct appeal, Echemendia unsuccessfully challenged that ruling on the grounds that insufficient proof had been adduced that the witness actually was unavailable, and that consequently the use of his former testimony violated Echemendia's rights under the Confrontation Clause. [DE 14, Ex.G at 32-36]

It is apodictic that the Sixth Amendment right of an accused to confront witnesses is a fundamental right, Dutton v. Evans, 400 U.S. 74 (1970), whose purpose is not only to allow the defendant to cross examine adverse witnesses, but also to allow the jury to observe and judge the witnesses' credibility. Id. at 89, quoting California v. Green, 399 U.S. 149 (1969); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). However, the Supreme Court recognizes that the Confrontation Clause does not bar the admission of all out-of-court statements. Ohio v. Roberts, 448 U.S. 56, 66 (1980). In addition, it is well established that violations of the Confrontation Clause are subject to harmless error review. Coy v. Iowa, 487 U.S. 1012 (1988).

Here, there has been no showing that Echemendia's Confrontation Clause rights were violated when Detective Cabrera's testimony from the earlier trial was admitted. That testimony was given during a trial and hence was subject to cross-examination. Cf. Crawford v. Washington, 541 U.S. 36 (2004). To the extent that

Echemendia argues that an insufficient showing was made of the witness' unavailability, that determination was a state evidentiary ruling that will not support habeas corpus relief. <u>Estelle v. McGuire</u>, <u>supra</u>. And even if the admission of the former testimony had been a Confrontation Clause violation, it plainly was no more than harmless error where two eyewitnesses saw Echemendia shoot the victim and another placed the murder weapon in his hands moments before the shots were fired. For these reasons, the state courts' rejection of this claim comported with applicable federal authorities, and federal relief should be denied as well. <u>Williams v. Taylor</u>, <u>supra</u>.

In his fourth claim, Echemendia maintains that his conviction was obtained through the prosecution's failure to disclose evidence that was exculpatory or could have been used for impeachment. In his fifth claim, he argues that the court erred by omitting a portion of Detective Cabrera's former testimony. These contentions are repetitive of claims 12 and 15, *infra*. Since the state court issued a detailed written order denying claims 12 and 15 in Echemendia's Rule 3.850 proceeding, these arguments will be discussed below in connection with claims 12 and 15.

In claim six, Echemendia asserts that his appellate attorney rendered ineffective assistance of counsel by failing to supplement the appellate brief with the standard established in <u>Crawford v. Washington</u>, <u>supra</u>, as to the admission of Detective Cabrera's former testimony. The <u>Strickland</u> principles also apply in assessing claims of ineffective assistance of appellate counsel. <u>Eagle v. Linahan</u>, 268 F.3d 1306 (11 Cir. 2001); <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). Tactical or strategic choices as to which issues to pursue on appeal generally are "properly left to the sound professional judgment of counsel," <u>United States v.</u>

13

<u>Perry</u>, 908 F.2d 56, 59 (6 Cir. 1990), and competent appellate counsel elect to present only the strongest nonfrivolous claims in order to maximize the likelihood of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). Therefore, when appellate counsel has filed a brief on the merits, the presumption of effective assistance will be overcome only in rare circumstances. <u>Gray v. Greer</u>, 800 F.2d 644 (7 Cir. 1986).

"To determine whether the failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim. ... If we conclude that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." <u>Eagle</u>, <u>supra</u> at 1322.

Here, there is no possibility that the omission of an argument based on <u>Crawford</u> affected the outcome of Echemendia's appeal. In <u>Crawford</u>, the Supreme Court departed from former Confrontation Clause jurisprudence by establishing a *per se* bar to the admission of out-of-court testimonial statements made by unavailable declarants where there was no prior opportunity for cross-examination. Since Detective Cabrera's out-of-court statements in this case were made during a former trial where the opportunity for cross examination obviously existed, <u>Crawford</u> would not have foreclosed the admission of that testimony, so appellate counsel's failure to make a contrary argument did not amount to constitutionally deficient representation. <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir. 1990)(appellate counsel is not required to raise meritless issues).

In claim seven, Echemendia asserts that his right to be present at all critical stages of the proceedings was violated when

the court granted the state's motion for a pre-trial witness bond when neither he nor his counsel was present.  The record reveals that the state filed a motion for such a bond on May 3, 2000, to compel Lazaro Drake to testify. [DE 14, Ex.B-C] The court granted the motion. [Id.] The bond was discharged on October 6, 2000. [Id.]

The right of an accused to be present during all critical stages of the trial is basic and fundamental.  Rushen v. Spain, 464 U.S. 114, 117 (1983).  A defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure.  Kentucky v. Stincer , 482 U.S. 730, 745 (1987). However, due process does not require a defendant's presence when it would be useless or only slightly beneficial.  Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934), overruled on other grounds, Malloy v. Hogan, 378 U.S. 1 (1964). Specifically, a defendant has no constitutional right to be present at pretrial hearings involving legal argument where no evidence is presented. Roberts v. Singletary, 794 F.Supp. 1106, 1128 (S.D. Fla. 1992) (citing In Re Schriner, 735 F.2d 1236, 1241 (11 Cir. 1984)). Here, it is readily apparent that the pretrial proceeding where the witness bond was granted merely involved legal argument, so Echemendia's absence did not violate his constitutional rights, and does not warrant federal relief.

In his eighth claim, Echemendia contends that he received ineffective assistance of counsel when no motion to suppress his pretrial statements was filed, because he was prejudiced when the statement was used to impeach him at trial. When Echemendia made this same argument in his Rule 3.850 motion, the collateral trial court denied relief on the following holding:

> During the defendant's trial, he took the stand in his own defense. During cross

examination, the defendant's previous
statement to the police after <u>Miranda</u>
warnings was used to *impeach* him as it
contradicted his direct testimony. (See
State's Exhibit H). The defendant's
reasoning is that if his counsel had
moved to suppress his statement to police
then his statement couldn't have been
used to impeach him at trial during cross
examination.

First of all, the defendant provides no
grounds on which such a motion would be
viable. Second, assuming that even were
the defendant to have had a viable motion
to suppress and the suppression had been
granted, this would not prevent the State
from using his prior statement to impeach
him at trial. Therefore, the motion is
denied on this basis.

[DE 14, Ex.T at 4,
emphasis original]

The foregoing holding subsequently was affirmed without
comment. <u>Echemendia v. State</u>, <u>supra</u>, 959 So.2d 737.

AS the state courts found, although a defendant's statement
that is suppressed as the result of <u>Miranda</u> violations is
unavailable to the state during its case-in-chief, the statement
may be admissible as a prior inconsistent statement and used by the
state for impeachment purposes. <u>Harris v. New York</u>, 401 U.S. 222
(1971). Therefore, Echemendia's argument as to the prejudice he
allegedly suffered when counsel did not move to suppress his
pretrial statement is simply incorrect, as the statement even if
suppressed still could have been used for impeachment. Accordingly,
the state court's resolution of this claim was in keeping with
applicable federal authorities, <u>cf</u>. <u>Strickland</u>, <u>supra</u>, and that
result should be allowed to stand. <u>Williams v. Taylor</u>, <u>supra</u>.

16

In his ninth claim, Echemendia asserts that his counsel provided ineffective assistance by failing to file a motion to suppress inculpatory tangible evidence.  The trial court in the state collateral proceeding found this argument to be without merit for the following reasons:

> At trial, spent casings found in the alleyway behind the defendant's house were introduced as evidence against him. The defendant alleges that defense counsel should have filed a motion to suppress such evidence.
>
> The defendant had no standing to move to suppress those casings as they were not found on his property but in the public alleyway behind his house. Thus the defense could not have moved to suppress that evidence. As such, this ground is without merit and denied.

> [DE 14, Ex.T at 4]

It is well settled that in order to have standing to raise a Fourth Amendment claim, the challenger must have a "legitimate expectation of privacy" in the places from which the items were seized or in the items themselves." Rakas v. Illinois, 439 U.S. 128 (1978). Florida courts are constitutionally required to review search and seizure issues in conformity with the Fourth Amendment and its interpretation by the United States Supreme Court.  Perez v. State, 620 So.2d 1256, 1258 (Fla. 1993). Here, where the shell casings were found in a public alleyway, the state court's determination that Echemendia had no standing to challenge their seizure was in accord with these applicable federal principles, and counsel's failure to move to suppress them satisfies neither prong of the Strickland test for ineffective assistance.

In his tenth claim, Echemendia faults his lawyer for failing

17

to make an adequate objection to the impermissible testimony elicited from Detective Fadal. In claim eleven, he charges counsel with providing ineffective assistance by failing to object to the admission of Deputy Cabrera's former testimony on the ground that the state had made no showing that the witness was unavailable. As the state court found in the Rule 3.850 proceeding [DE 14, Ex.T at 5], these arguments are repetitive of claims two and three, *supra*, and are without merit for the same reasons discussed above.

In his twelfth claim, Echemendia argues that the state withheld exculpatory evidence in the form of a plea agreement with key witness Lazaro Drake, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). When he made this same argument in his Rule 3.850 motion, the state court rejected it for the following reasons:

> As to this ground, the defendant alleges that the State failed to give the defense evidence of a plea agreement between the State and Lazaro Drake ("Drake"). The defendant maintains that with this knowledge, trial counsel could have impeached Drake by showing he received a benefit in exchange for testifying. The defendant also argues that given that his defense was absolute innocence and that Drake and Sergio Adames murdered the victim, the jury would have had reasonable doubt once it learned of Drake's plea agreement.
>
> The Clerk's Docket Sheet (See State's Exhibit I) reveals that a transcript of Drake's change of plea hearing was sent to former defense counsel Luis Fernandez on July 22, 1997. For being an accessory after the fact, Drake pleaded guilty, was sentenced to 130 days in the county jail, following probation special condition that Drake reported to Detective Hart once a week while defendant's case was pending or until his probation concluded,

18

costs were waived, and Drake agreed to testify truthfully as to all matters on this case. (See State's Exhibit I). This condition did not obligate him to testify against the defendant nor does it prove that he was given a reduced sentence in exchange for testimony against this defendant. The only thing that this plea accomplishes is preventing Lazaro Drake from recanting testimony previously given to police and being called to testify for the defense. At the time of this trial, Lazaro Drake's probation was over and thus there was no threat of a possible violation of probation should he refuse to testify or testify truthfully.

All terms of the plea were disclosed and thus no violation per *Brady v. Maryland*, 373 U.S. 83 (1963), for the failure to turn over favorable evidence nor was there a *Giglio v. United States*, 405 U.S. 150 (1972), as the fact of the plea was public. As such, Defendant's motion is denied on this basis.

[DE 14, Ex.T at 5-6]

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a Brady violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. United States v. Severdija, 790 F.2d 1556, 1558 (11 Cir. 1986). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Stewart, 820 F.2d 370, 374 (11 Cir. 1987), quoting, United States v. Bagley, 473 U.S. 667, 682 (1985). Here, where the state court determined that a copy of

19

Lazaro Drake's change of plea proceeding was sent to defense counsel prior to Echemendia's trial, it is readily apparent that the criteria for a <u>Brady</u> violation have not been shown in this case. Consequently, claim 12 of this petition warrants no federal relief.

Echemendia expressly indicates on the face of his initial petition that he wishes to abandon claim thirteen. [DE 1 at 13]

In his fourteenth claim, Echemendia contends that the state committed a violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), when it presented false testimony that Lazaro Drake received no benefit in exchange for his testimony. However, under <u>Giglio</u>, due process is violated only when the state knowingly introduces materially false evidence in a criminal prosecution, and as the state court found in connection with claim 12 above, on this record no such violation occurred because Drake's plea was a matter of public record. Consequently, Echemendia's argument in this regard is without merit.

In his fifteenth claim, Echemendia maintains that his lawyer rendered ineffective assistance by failing to object to the court's decision to strike the portion of Detective Cabrera's former testimony where he stated that Echemendia had requested an attorney. The state courts in the collateral proceeding found this contention to be without merit, as follows:

> On July 16, 2000, Detective Osvaldo Cabrera testified in this case. The result of that trial was a hung jury. His testimony was transcribed and is attached as State's Exhibit F. All of the discussions and/or objections as to reading of Detective Cabrera's previous testimony during that trial is attached

20

as State's Exhibit G.

Defense counsel had already objected to the reading of the statement so this issue was preserved for appeal and should have been brought on direct appeal. For that reason, the motion is denied on this basis.

[DE 14, Ex. T at 7]

Unfortunately, the respondent in this proceeding has been unable to supply the exhibits to its response to the Rule 3.850 motion referenced in the foregoing quotation. See DE 18.[4] Nonetheless, the transcript of Echemendia's trial makes it apparent that counsel's failure to object to the striking of Detective Cabrera's reference to Echemendia's request for an attorney was a strategic choice.

During Echemendia's own testimony at trial, at a sidebar conference, defense counsel objected to questions by the prosecutor about the rights waiver form that Echemendia signed on the ground that it was outside the scope of his direct examination. [DE 18, T.639, 641-42] During that discussion, the following exchange between the court and defense counsel occurred:

DEFENSE COUNSEL: All right. But Judge, as a caution, we got into an area last time where my client then said, well, they arrested me and I said I want a lawyer.

THE COURT: But apparently that may have

---

[4]The Court notes Echemendia's objection [DE 21] that as part of its response to the supplemental order to show cause [DE 18], the state has supplied the copy of a response to a Rule 3.850 motion that does not correspond to the Rule 3.850 motion related to the trial under discussion. [DE 14, Ex.R] However, this error is harmless and has caused Echemendia to suffer no prejudice.

come after some impeaching type statement
he made and I can only assume, because
they don't want to do Echemendia cuatro,
that they won't get into that area.

And if your client is advised he shall
not go into that area, I can't imagine
that it would be favorable for him to say
that, then nobody is going to hear about
that. But if he blurts that out, he does
that to his own detriment, but it can be
fashioned where the State can do, under
the law, what they're entitled to do and
he doesn't mention he invoked his rights
to counsel which might, you know, be
negative in the eyes of the jury.

                    *    *    *

And if he denies [being advised of his
rights], then they will bring in some
rebuttal witness to say that he said it,
but there won't be a discussion about
invoking his right to remain silent. They
will stop short of that, I hope.

DEFENSE COUNSEL: Again, in an abundance
of caution and without compromising any
attorney/client conversations, I have
advised him not to get into that area
because I think it is counter-productive.

                              [DE 18, T.645-46]

    It is well settled under federal law that tactical or
strategic choices by counsel cannot support a collateral claim of
ineffective assistance. Jackson v. Herring, 42 F.3d 1350 (11 Cir.
1995); McNeal v. Wainwright, 722 F.2d 674 (11 Cir. 1984); United
States v. Costa, 691 F.2d 1358 (11 Cir. 1982). Even if such a
decision in retrospect appears incorrect, it can constitute
ineffective assistance only "if it was so patently unreasonable
that no attorney would have chosen it," Adams v. Wainwright, 709
F.2d 1443, 1445 (11 Cir.), cert. denied, 464 U.S. 1663 (1984), or

if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986). The Supreme Court has observed that strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Strickland v. Washington</u>, <u>supra</u> at 690-91.

Here, it is apparent from the quoted discussion that defense counsel strategically opted to steer Echemendia away from contending that he invoked his right to counsel, believing that it would be "counter-productive" and "detrimental" in the eyes of the jury. Therefore, it follows that his failure to object to the striking of Detective Cabrera's reference to Echemendia's request for an attorney likewise was a strategic choice that served the same purpose, so habeas corpus relief is not available for that decision. <u>Jackson v. Herring</u>, <u>supra</u>.

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated this 18th day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Jorge Echemendia, <u>Pro Se</u>
     DC #M17360
     Glades Correctional Institution
     500 Orange Avenue Circle
     Belle Glade, FL 33430-5222

Linda Katz, AAG
Department of Legal Affairs
444 Brickell Avenue
Suite 650
Miami, FL 33131